PARRO, J.
12Pefendant, Arthur Leon Leblanc, Jr., was charged by bill of information with pornography involving juveniles, a violation of LSA-R.S. 14:81.1(A)(3) (prior to 2010 amendments). He pled not guilty and filed a motion to suppress. The trial court[1] denied the motion to suppress, and defendant withdrew his earlier plea and entered a new plea of guilty as charged, reserving his right to appeal the denial of his motion to suppress under State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to serve two years of imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, and to pay a $250 fine. Defendant filed a motion to reconsider sentence, but the trial court denied that motion. He now appeals, alleging two assignments of error related to the denial of his motion to suppress. For the following reasons, we affirm defendant’s conviction and sentence,

FACTS

Because defendant pled guilty, the facts of his offense were not developed at trial. The following recitation of facts is taken from the factual basis stipulated to by the state and the defense at the time that defendant pled guilty.
On or about September 28, 2009, agents with the Louisiana Attorney General’s office conducted an undercover operation to look for persons who were potentially in possession of pornography involving juveniles. At that time, they came across an internet protocol (IP) address that they observed to be sharing files suggestive of child pornography. On the motion of the Attorney General’s office, the court ordered the issuance of a subpoena duces tecum under LSA-C.Cr.P. art. 66 to Cox Communications for the customer records of that IP address. The returned records revealed that someone in defendant’s residence was the owner of that IP address.
|sThe Attorney General’s office, with assistance, executed a search warrant at defendant’s home. During the execution of that search warrant, technicians performed an on-scene forensic preview of a computer belonging to defendant. They recovered content depicting child pornography. After being informed of his Miranda[2] rights, defendant admitted to knowingly possessing, downloading, and viewing hundreds of movies of child pornography.

ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, defendant argues that the trial court erred in finding that the Attorney General investigators did not need to obtain a search warrant to request defendant’s customer information from his internet service provider (ISP). Specifically, he contends that information held by an ISP implicates privacy interests in which internet users have a reasonable expectation of confidentiality.
Agent David Ferris, an investigator with the Attorney General’s office, was the only witness called at the hearing on defendant’s motion to suppress. Agent Ferris testified that during a peer-to-peer investigation, he discovered an IP address, namely, 68.229.154.86, which was downloading *659 and sharing files indicative of child pornography. According to Agent Ferris, the IP address and file information were both readily visible and available to anyone running the same peer-to-peer software, including the general public. Agent Ferris entered the IP address into a public record database called the American Registry for Internet Numbers (ARIN), and he discovered that it was registered to Cox Communications (Cox).
Based upon this information, the Attorney General’s office submitted a motion for a subpoena duces tecum under LSA-C.Cr.P. art. 66 with the Nineteenth Judicial District Court, Parish of East Baton Rouge. That court signed an order for the issuance of a subpoena duces tecum to be issued to Cox for the subscriber ^information related to IP address 68.229.154.86. Agent Ferris subsequently served this subpoena duces tecum on Cox via fax. Cox returned billing information indicating that the IP address was registered to defendant’s wife at an address in Franklin, Louisiana. Agent Ferris used this billing information to apply for a search warrant of the residence. During the ensuing search, the agents discovered numerous files of child pornography on defendant’s computer, and defendant admitted to knowingly possessing those files.
Defendant filed a motion to suppress, alleging two grounds for suppression. First, he argued that the state should have been required to seek a search warrant in order to obtain his customer information from Cox. He contended that an individual has a reasonable expectation of privacy in his customer information held by an ISP. The trial court denied defendant’s motion to suppress, finding that defendant had no reasonable expectation of privacy in information provided to, and maintained by, Cox in the ordinary course of its business.
At the trial of a motion to suppress, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of any evidence seized without a warrant.[3] See LSA-C.Cr.P. art. 708(D). When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, i.e., unless such a ruling is not supported by the evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 280-81. However, a trial court’s legal findings are subject to a de novo standard of review. See State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746, 751.
The Fourth Amendment to the United States Constitution protects individuals from “unreasonable searches and seizures.” Whether the Fourth | ¡Amendment protects an individual from a warrantless search rests on whether the individual can demonstrate a reasonable expectation of privacy against government intrusion. See Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 512,19 L.Ed.2d 576 (1967). Only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search. See Rakas v. *660 Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978).[4]
Federal case law interpreting the Fourth Amendment has found no expectation of privacy in internet subscriber information. See, e.g., Guest v. Leis, 255 F.3d 325, 336 (6th Cir.2001); U.S. v. Kennedy, 81 F.Supp.2d 1103, 1110 (D.Kan.2000). These and other similar decisions rely in part on settled federal law that a person has no reasonable expectation of privacy in information exposed to third parties, like a telephone company or a bank. See Smith v. Maryland, 442 U.S. 735, 742, 99 S.Ct. 2577, 2581, 61 L.Ed.2d 220 (1979) (finding no privacy interest in telephone numbers dialed); United States v. Miller, 425 U.S. 435, 442-44, 96 S.Ct. 1619, 1623-24, 48 L.Ed.2d 71 (1976) (finding no privacy interest in bank records). The United States Supreme Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed. See Miller, 425 U.S. at 443, 96 S.Ct. at 1624.
Even if we are to assume that the federal courts who have addressed this issue are correct in finding that there is no expectation of privacy in internet subscriber information under the Fourth Amendment, we still must determine whether the greater protections of privacy found in the Louisiana Constitution | (¡require a different conclusion. Louisiana Constitution article 1, section 5 provides, “Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” Thus, this constitutional provision protects individuals not only from unreasonable searches or seizures, but also from unreasonable invasions of privacy. The Louisiana Supreme Court has interpreted the right of privacy to afford even more stringent protection of individual liberty than the Fourth Amendment. See State v. Perry, 610 So.2d 746, 756 (La.1992).
As support for his contention that an individual has a reasonable expectation of privacy in customer information held by an ISP, defendant cites the New Jersey case of State v. Reid, 194 N.J. 386, 945 A.2d 26 (2008). In Reid, 945 A.2d at 28, the New Jersey Supreme Court addressed this issue squarely and found that, under the New Jersey Constitution, citizens have a reasonable expectation of privacy in their internet subscriber information on file with an ISP. The Reid court noted that although such an expectation of privacy had not been recognized in federal case law, New Jersey’s Constitution provides more protection than federal law affords. In doing so, the court pointed out that a New Jersey citizen has a reasonable expectation of privacy in his bank and telephone billing records even though these rights have not been recognized under federal law. See Reid, 945 A.2d at 32-33. In ultimately holding that an internet user has a privacy interest in the subscriber information he provides to an ISP, the Reid court reasoned that disclosure to a third-party provider does not upend the privacy interest at stake under New Jersey law. See Reid, 945 A.2d at 33. The court stated that *661 users make such disclosures to ISPs for the limited goal of using the subscribed-to technology and not to promote the release of personal information to others. Id.
However, we do not find persuasive defendant’s argument that the Reid case from New Jersey should itself compel this court to require a search warrant in order to obtain ISP subscriber information. We note that, in Reid, the |7subscriber information was provided to law enforcement authorities in response to what the New Jersey Supreme Court termed a “defective municipal subpoena.” Reid, 945 A.2d at 37. The Reid court did not go so far as to say that the privacy interest a person holds in his subscriber information required a search warrant for its disclosure. Instead, the court stated that law enforcement officials could satisfy the protection of the right to privacy in this instance by serving a grand jury subpoena on an ISP without notice to the subscriber. Reid, 945 A.2d at 38. The court even stated that, in that case, the state could seek to reacquire the same subscriber information with a proper grand jury subpoena. Id. Therefore, Reid does not strongly support defendant’s argument for suppression of the evidence recovered pursuant to the search warrant, which was issued after the state received defendant’s subscriber information in response to an Article 66 subpoena.
We turn now to the facts of the instant case. The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society is prepared to recognize as being reasonable. State v. Ragsdale, 381 So.2d 492, 497 (La.1980). At least one Louisiana appellate court has found that historical usage and billing data maintained by a cell phone provider implicated neither the Fourth Amendment nor LSA-Const. art. I, § 5, and that, under those circumstances, the state was not obligated to obtain those records by warrant rather than by subpoena. See State v. Marinello, 09-1260 (La.App. 3rd Cir.10/6/10), 49 So.3d 488, 510, writs denied, 10-2494 (La.3/25/11), 61 So.3d 660, and 10-2534 (La.3/25/11), 61 So.3d 661.
At the outset, we note a lack of evidence as to whether defendant or his wife had any actual or subjective expectation of privacy in the billing information provided to Cox as their ISP. The information provided by Cox in response to the | sArticle 66 subpoena was voluntarily disclosed by defendant’s wife in order to obtain internet service. It included her name, address, phone number, and payment information. All subscribers undoubtedly realize that ISPs have both the capability and the necessity of keeping on file such information for billing and troubleshooting purposes. Once defendant’s wife subscribed to internet services through Cox, she divested herself of any expectation of privacy in the information she provided in order to receive the service.
Even if we were to assume that defendant or his wife had an actual or subjective expectation of privacy in the subscriber information provided to Cox, we would still find that this expectation of privacy would not be recognized by society as reasonable. The subscriber information provided by defendant’s wife to Cox was no different, and perhaps even less intrusive, than the information a cell phone provider stores on each call for billing purposes. In Marinello, 49 So.3d at 509, a representative of the cell phone company testified that it automatically collected and stored the following information for each call: the mobile number, the electronic serial number of the phone, the calling number, the time, the location of the *662 phone, the cell site, and the area code for the location. Whereas cell phone users may have no idea of the nature of the information they communicate to their service providers, internet subscribers, at least in this circumstance, know exactly the type of information they have submitted to their ISPs in order to obtain service. Under these facts, we find that where an internet subscriber voluntarily discloses routine billing information to an ISP in order to receive service, he has no reasonable expectation of privacy in that information, and, therefore, the issuance of a search warrant for its disclosure would not be required. Accordingly, the trial court did not err or abuse its discretion in finding that an Article 66 subpoena was a sufficient means for the Attorney General’s office to request the subscriber information from defendant’s ISP.
This assignment of error is without merit.
[ 'ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant argues that the trial court erred in not ruling as to whether investigators failed to follow the proper procedure in using an Article 66 subpoena to obtain his customer records from his ISP. He requests this court to consider this issue and find that the Attorney General’s office improperly served his ISP via facsimile, rather than by one of the methods of service listed in LSA-C.Cr.P. arts. 735 and 741.
Defendant’s motion to suppress raised this argument as its second ground for suppression. After the hearing on the motion to suppress, Judge Charles L. Porter ordered both sides to brief the arguments raised at the hearing. The state and the defense complied, briefing both the issue addressed in the first assignment of error and the issue about whether the Article 66 subpoena was properly served on Cox. On January 17, 2012, Judge Porter issued written reasons for judgment, in which he stated the motion to suppress was denied, However, these written reasons addressed only the argument raised in the first assignment of error, and they did not address the service issue. On February 3, 2012, defendant filed a motion to reconsider his motion to suppress, noting the trial court’s failure to address the service issue and asking for consideration of that issue. Defendant did not ask for a formal hearing on that motion, and it appears from the record that no action was ever taken on it. The minutes reveal that on March 5, 2012, a pretrial conference was held with the state and defense counsel, and it was presided over by Judge James R. McClelland. Judge McClelland later accepted defendant’s Crosby plea on March 20, 2012.
Now, defendant asks this court on appeal to consider the merits of the second argument raised in his motion to suppress. It is ordinarily incumbent upon the proponent of a motion to move for a hearing date on that motion. Otherwise, it may be considered that the motion has been abandoned. State v. Coates, 509 So.2d 438, 440 (La.App. 1st Cir.1987). In the instant case, Judge Porter clearly 1 indenied defendant’s motion to suppress, but based on his written reasons, it is unknown whether he failed to consider or simply found no merit at all in defendant’s second argument. Defendant moved for reconsideration of Judge Porter’s ruling on the basis that he did not address the second argument, but he did not formally request a hearing on that issue. Further, nothing in the record indicates that he ever raised this issue before Judge McClelland. The record does not reflect why defendant’s case was transferred from Judge Porter to Judge McClelland, but defendant should have remained aware that no action had been taken on his mo *663 tion to reconsider. He took no further steps to secure a disposition on this issue before his plea. Because he did not, we are constrained to conclude that defendant abandoned this argument in the trial court.
Accordingly, this assignment of error presents nothing for review on appeal.
CONVICTION AND SENTENCE AFFIRMED.

. Judge Charles L. Porter presided at the hearing on the motion to suppress.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. We note that law enforcement officers seized the evidence from defendant’s computer under the authority of a search warrant. However, defendant argues that the state was required to obtain an additional, earlier search warrant to secure his subscriber information from his ISP. For the reasons that follow, we doubt whether the state's conduct in securing this subscriber information via a subpoena duces tecum even constituted a "search” or an “invasion of privacy.” Therefore, under either burden, our following analysis remains unchanged.

. We note that any privacy interest implicated in this case belonged, on its face, to defendant’s wife, who was the account holder for the IP address. However, to the extent that defendant was "adversely affected” in relation to any such privacy interest, he would have standing to raise that illegality under the Louisiana Constitution. See LSA-Const. art. I,§ 5.